Pope and Hickman *against* John Nance and Co. for
the use of John R. Lucas.

*December,* 1824.

THIS was an action of assumpsit in the Circuit Court of *Madison* County, by *John Nance* and *John R. Lucas,* partners, under the firm of *John Nance,* and Co., for the use of *Lucas* against *Willis Pope* and *John P. Hickman,* late partners under the firm of *Pope* and *Hickman.* The declara-

A creditor re-
ceives from his
debtor in pay-
ment a promisso-
ry note of other
parties not en-
dorsed by the
debtor—some

of the signatures prove to be forged. The creditor cannot sustain an action on the original consideration, unless as soon as he discovers the forgery he tenders a return of the note, or unless with due diligence he has exhausted all the liabilities on it.

DECEMBER, 1824.

Pope and
Hickman
v.
John Nance
and Co.

tion contained five counts. The three first, *Indeb. asst.* for slaves sold by plaintiffs to defendants—*quant. meruit* for the same, and *Insimul Comp.* 4th count—Plaintiffs, by *William Davis*, jr. their agent, sold and delivered a number of slaves to defendant; and defendants, to secure the payment of $6,666, part of the price thereof, made and delivered to *Davis* their promissory note, dated 5th *February*, 1819, payable at 9 months; which *Davis* afterwards transferred and delivered to plaintiffs. And afterwards, on the 22d of *December*, 1819, an instrument purporting to be the promissory note of *Henry C. Bradford* and *Stokeley D. Hutchings*, under the firm of *S. D. Hutchings* and Co. dated at *Huntsville* on the day and year last aforesaid, signed by said *Hutchings* and Co. and with the name "*Simon Turner*" thereto subscribed, as a maker thereof, for the payment on or before the first day of *August* thereafter, to *Egbert Harris* or order, of $6,408, payable and negotiable at the Planters' and Merchants' Bank of *Huntsville*, and endorsed "*Egbert Harris*," was by defendants, and as the genuine promissory note as well of the said *Turner* as of the other makers, offered in part payment to plaintiffs of the amount due on the aforesaid note of defendants to said *Davis*; and plaintiffs believing the same to be the genuine note as well of said *Turner* as of the other makers, and especially and solely relying on the solvency of said *Turner*, received the same in payment and satisfaction of $6,408 of the amount then due of said note of defendants to *Davis*, and surrendered to defendants the latter note. This count then proceeds to state the demand at the Bank of payment of the note of *Hutchings* and Co. &c.—That payment was refused—that the signature of *Turner* has been found to be and is forged—that the note is wholly worthless—that, although plaintiffs used due and legal diligence to obtain payment thereof, they have failed so to do—that said $6,408, due by note of defendants to said *Davis*, have not been paid either to *Davis* or the plaintiffs; nor was the same or any part paid, satisfied, or extinguished by delivery of said supposed promissory note of *Hutchings* and Co. and *Turner*. Of all which several premises in this count set forth, defendants have had due notice; and thus defendants became liable to pay to the plaintiffs said sum of $6,408 according to the tenor and effect, &c. concluding with a super se assumpsit in the usual form. The 5th count states the transfer of the note of *Hutchings* and Co. &c. &c. as the 4th. And that afterwards, on, &c. a suit at law in *Madison* Circuit Court on the note was brought by *Lucas*, as assignee of *Harris*, against said *Hutchings* and Co. and *Turner*. *Turner* plead

that he did not sign the note ; and upon the issue thereon, verdict and judgment were rendered in his favour ; which judgment is of Record in this Court, not reversed or otherwise vacated. Of all which, and of the institution of said suit and of the proceedings,. verdict and judgment therein, defendants had due and timely notice ; by means whereof, &c.

General issue—Verdict for plaintiffs for $8358 88 cents and judgment. On the trial, the defendants took 6 bills of Exceptions ; the 5 first to the admissibility of testimony given. As the last was the only one considered in the opinion given by the Court, the reporter deems it unnecessary to state so much of the original Record and of the argument as relate to the 5 first exceptions.

From the testimony as set out in the Record, it appears that *William Davis,* jr. as the agent of *Nance* and Co. sold the negroes to *Pope* and *Hickman ;* and for a balance of the price took their note payable to, and endorsed by, *John Brahan,* dated 6th of *February,* 1819, payable at nine months ; which he afterwards endorsed to *Nance* and Co. In the Spring of 1819, the partnership of *Pope* and *Hickman* was dissolved, and *Hickman* assigned all his interest to *Pope.* In *December,* 1819, *Lucas,* knowing of the dissolution of the partnership, applied to *Pope* for payment. He offered to pay in cotton, but they could not agree as to the price ; and after some negotiation it was agreed that the note of *Hutchings* and Co. and *Turner,* endorsed by *Harris,* should be taken in part payment, and that *Pope* should pay the balance. *Pope* refused to endorse the note transferred, but represented the firm of *Hutchings* and Co. as in good credit, and *Turner* and *Harris* as respectable planters ; and that it was a good and solvent note. *Lucas* received the note of *Hutchings* and Co. and the balance in money ; gave up the note of P. and H. to *Pope,* which he cancelled. On the 10th of *August,* 1820, *Lucas* instituted suit in *Madison* Circuit Court on the transferred note against *Hutchings* and *Turner.* *Turner,* by his plea, denied that he had signed or executed the note ; and on the issue thereon, verdict and judgment were rendered for him. *Hutchings* died, and the suit abated as to him. Judgment by default was taken against *Bradford.* No evidence appeared of execution thereon, or of proceedings against the representatives of *Hutchings.* Dr. *Chambers,* as agent of *Lucas,* (who appeared to hold the sole interest in the transferred note,) within a week after it became due employed Counsel to prosecute on it. He had been informed that *Turner* had declared that it was a forgery ; and *Chambers,* supposing that *Pope* felt much

Pope and
Hickman
v.
John Nance
and Co.

interest in the business, as he might have the money to pay should the forgery be established, mentioned to him the name of the Counsel whom he intended to employ ; and *Pope* expressed his willingness that he should be employed. *Chambers*, on going to the office of the Counsel for the purposing of engaging his services, met with *Pope* there ; he believes accidentally. He did not, as the agent of *Lucas*, notify *Pope* to attend to the suit, and that *Lucas*, in the event of failing against *Turner*, would hold him bound by the verdict.

In the Winter of 1821, *James H. Lucas*, as agent of *John R. Lucas*, came to *Huntsville* for the purpose of attending to the collection of the transferred note ; and *Pope* acknowledged to him, that if the note proved to be a forgery, or the parties liable thereon proved to be insolvent, the firm of *Pope* and *Hickman* was bound for the amount.

The sixth bill of Exceptions states, that defendants, by their Counsel, moved the Court to instruct the Jury that if they believed from the testimony that due notice was not given by the plaintiffs to *Egbert Harris*, the endorser of the note, described in the fourth and fifth counts of the declaration, and to the defendants of the failure of the makers to pay, that the acknowledgment of *Pope* (after failure to give such notice) that he was liable to pay the same, could not bind *Hickman ;* and that the plaintiffs could not recover in this action.—To instruct the Jury that unless they believed from the testimony that *Pope* had transferred the note by the authority of *Hickman*, (which authority they could not infer from the partnership which had existed prior to, but had been dissolved before, the transfer,) that *Hickman* was not liable.

Whereupon the Court instructed the Jury, that if they should believe that the signature of *Turner* was not a forgery, the law which was to govern them was according to the instructions prayed for ; but that if from the testimony they should believe that *Turner's* signature to the note was a forgery, and that the note was given in payment of the debt of *Pope* and *Hickman,* such notice and such authority from *Hickman* to *Pope* to make the transfer was not necessary in order to entitle the plaintiffs to recover.

The assignments of Error, on which the decision of the case turned, were,

1, There is no cause of action in the declaration.

2, The proof did not support the averments in the declaration.

3d, 4th, 5th, 6th and 7th. There is no cause of action in the 1st, 2d, 3d, 4th, or 5th counts of the declaration.

13th and 14th, The Court below erred in refusing to give the instructions asked for by the defendants' Counsel, and in the several instructions and opinions given to the Jury and excepted to in the 6th bill of Exceptions.

*Hopkins* for plaintiffs in Error.—We contend that this declaration shews no cause of action against *Pope* and *Hickman.*

When *Lucas* received from *Pope* the note of *Hutchings* and Co. and *Turner, Pope* and *Hickman* were no longer partners. This note was taken in discharge of theirs, not to *Nance* and *Lucas,* but to *Davis.* There was a new contract made by new parties on both sides. 12 John. 409. *Pope* received and cancelled the surrendered note. *Hickman* had assigned to him all the partnership effects. It does not appear that *Pope* was insolvent. *Lucas* was fully informed of the dissolution of the partnership, and must rely solely on the new contract which he has made and the new security which he has taken. 4 Esp. R. 89. 5 Esp. 102. 14 East. 239. Even a judgment, by the note of one of the parties jointly liable, is discharged so far as to enable him to sustain an action against the party who was jointly liable with him. 11 John. 518. The transfer of the note was the separate act of *Pope.* If he had so intended, he could not have bound *Hickman* by it. There was no privity of contract between *Lucas* and *Hickman ;* and for any cause of action arising on the transfer of the note, *Hickman* was not liable, and could not be without his express assent, which does not appear. This last contract, too, was not for the benefit of *Nance* and Co., but for the benefit of *Lucas* alone. But if *Hickman* be not liable, *Pope* is not, because there is a misjoinder. The contract as to the parties is not such as was declared on. 1 Ch. Pl. 31, 34. 19 John. 109. 2 John. 213. Tom *v.* Goodrich. 20 John. 76. 16 John. 273. 3 John. 528. 4 John. 227. 19 John. 154.

But neither *Pope* nor *Hickman* is liable. How would the case stand had they endorsed the note ? An endorsement is a contract whose implied terms are to be ascertained by the known rules of law. Here is no sufficient averment or shewing of such diligence as to the parties first liable as was necessary to fix the liability on the defendants in the action. A transfer by delivery is also a contract, and the liability of the party transferring is to be tested by similar rules. Take the case in the most favourable light for the plaintiffs in the action—On the transfer of the note, what was implied as contracted to be done on their part ? Evi-

HARVARD LAW SCHOOL LIBRARY.

dently that they would use all due and legal means to reco-
ver of the several parties liable thereon. The most which
can be made of *Pope's* undertaking is, that he is liable so
far as (after timely resort to all such means) the note shall
prove to be unproductive. Due diligence must be used,
and all the liabilities on it must be exhausted, before the
plaintiffs can resort to us. But it will probably be contend-
ed that this case comes within the principle of a payment
in bank notes which turn out to be forged, and that *Pope*
and *Hickman* are liable on the original consideration, or on
the cancelled note to be considered to be revived. To ad-
mit that this would have been the effect of payment in forg-
ed bank notes cannot prejudice our case. Such payment
is in the usual course of the business of a mercantile part-
nership, and in the contemplation of the partners in con-
senting to be bound by the acts of each other. Bank notes
are treated as cash or other money ; if stolen, they be-
come the property of him who receives them in payment
in ignorance of the theft. An execution cannot be levied
on them. 1 Burrow, 459. 9 John. 120. 12 John. 220,
395. But paying or dealing in promissory notes was not
the business of this partnership, or in the contemplation of
the partners when they formed it. A joint obligee or a
partner after dissolution may release the joint debt. The
contracts are made subject to this power ; it is, by con-
struction, a part of the contract. 6 John. 531. 3 John.
70. *Lucas*, by the new contract, without the assent of
*Nance*, could discharge *Pope* and *Hickman*, as was done
when he surrendered their note. But the new contract
was made by *Pope* alone, and could not affect *Hickman*.
By the payment of the note transferred, and the new con-
tract by new parties, the right of action on the original
note was at least suspended. By payment in forged bank
notes the original contract never was discharged ; and, as
the cases in the books shew, the right of action remains un-
impaired. But here it was on the new contract only that
*Lucas* could have a right of action. The right and interest
of *Nance* were given up ; the note was transferred after
the dissolution of the partnership of *Pope* and *Hickman*, and
after the debt was due ; and if *Hickman* can be held liable,
partners must in this way be liable for the acts of each
other at any length of time after their connexion in busi-
ness has ceased, and no man could be safe in entering into
a partnership. If *Pope*, representing himself as solvent,
(as he is here said to have represented the makers and en-
dorser of the transferred note,) had given his own note
with or without security, it seems clear from the authorities

and on principle, that *Hickman* would have been discharged.

But as to the charge of the Court, as shewn by the 6th bill of Exceptions—The testimony shews that *Pope* refused to endorse the note, saying that it was a good and solvent note. To what extent was he bound by this transfer? Can he be held liable unless all due diligence has been used to make the note productive? *Hutchings, Bradford, Turner,* and *Harris,* were all liable before *Pope.* He can be answerable only in case of their default after all timely and legal means to recover of them. There is no averment of notice to *Harris,* of the non-payment by the makers. The drawer or endorser is always entitled to notice where the bill is drawn under circumstances which induce him to expect that it will be honoured. *Harris,* for aught that appears, was ignorant of the forgery, and may have endorsed for the accommodation of *Hutchings* and Co.; he could not be liable unless full opportunity was given to him by the holder to secure himself, nor can *Pope* be liable unless his right to resort to *Hickman* had been secured by proper diligence on the part of the holder against all the makers and the endorser. Why has not *Lucas* taken all the proper steps to recover the money from *Hutchings* and *Bradford?* They are not shewn to have been insolvent. No judgment was recovered against *Hutchings*—no proceedings appear to have been had against his representatives—no execution appears to have been issued on the judgment against *Bradford.* 19 John. 401. 20 John. 146, 172. 3 Day, 12. Ch. Bills, 321, and the references there made. 9 John. 121. 4 Hen. and Mun. 456. 19 John. 69. In this last case, the note was guaranteed as collectable and payable after due course of law; and the guaranty was lost by neglecting for seventeen months to take the necessary steps against the party originally liable. Here the note transferred was due on the 1st day of *August,* 1820, and the proper steps to recover from the estate of *Hutchings,* from *Bradford,* and from *Harris,* do not appear yet to have been taken.

The transfer of the note did not put it on the footing of mercantile paper. Our Statute as to this matter, (Laws Ala. 69,) extends only to instruments assigned or endorsed. The transfer here without endorsement, with express refusal to endorse, cannot put the case on a better footing for defendants in Error than if the note had been endorsed by *Pope* and *Hickman.* I have endeavoured to shew, that even had they endorsed, the plaintiffs in the action have not used the necessary diligence to make them liable.

The Statutes of *Virginia* and *Kentucky* give to the as-

39

Pope and
Hickman
v.
John Nance
and Co.

signee the right to sue in his own name, but do not, like ours, place assigned bonds or notes on the footing of bills of exchange. The decisions in those States require that all the precedent liabilities must be prosecuted to insolvency, or that it.must appear that they were insolvent when the.note became due, before the assignee can resort to his assignor. The same principles, from the nature of the contract, apply here ; something was surely intended by the parties when the note was transferred. They did not intend that the original note, although surrendered and cancelled, should yet remain in full force. In transferring and receiving the note of *Hutchings* and Co., the contract cannot be otherwise understood than that the party so transferring should be responsible only after all the preceding liabilities had been exhausted.

*Hutchinson* for defendants in Error.—The first enquiry in this case is, was there a new contract on the transfer of the notes, and in force at the institution of our suit, or had we a right of action on the original contract ? The two last counts shew the original contract, the transfer of the note, the circumstances which rendered that transfer a nullity, and left the original contract in full force, and aver defendants' liability and assumpsit on it. There was no new contract. It appears that *Pope* and *Hickman* had, but *Nance* and *Lucas* had not, dissolved their partnership ; that *Davis* to whom the original note was payable, was but their agent, and the money, from the making of the note, was due to them. The cases read by Mr. *Hopkins* apply entirely to what is termed in the civil law a novation. But the transfer of the note of *Hutchings* and Co., &c., was intended as a payment. The Record shews that *Lucas*, in receiving it, relied solely on *Turner*, but *Turner's* signature was forged : it was therefore not *Turner's* note which was paid to him, and the payees of the note of *Pope* and *Hickman,* like the vendor of articles paid for in a bad bill, had a right to recover on the original consideration. Transferring a note does not discharge the original contract unless the receiver agrees to run the risk. If a bill be unproductive, it may be considered as a nullity. So where both parties are ignorant of a forgery, if the sale be for money, and notes be taken in discharge of the debt, the plaintiff may recover on the original consideration. Ch. Bills, 120 to 130. 10 Vez, Jr. ex parte Blackburn. 6 Term R. 52. 7 Term R. 60. Owenson *vs.* Morse. 6 John. 110. 6 Mass. 321. 2 John. 455. This last case is, I think, in point and unanswerable. 17 John. 340. In this case a partner after the dissolution

assumed a partnership debt, and gave his note for the balance, the note when paid to be credited to the firm. Justice *Yates* said, the intent to discharge the other partner does not appear, and both partners are liable.

As to the argument of Mr. *Hopkins*—that due diligence as to the other makers and the endorser of the note has not been shewn, and that *Hickman* was not bound by *Pope's* transfer of the note, made after the partnership had ceased —How does this contract as to the transfer appear in the Record ? Is it not shewn that *Lucas* would not have received this note in payment but for his reliance on *Turner ?* He relied solely on him. The testimony shews this. The Jury were authorized so to infer from it. It was shewn too, and they were authorized to infer, that *Pope* represented *Pope* and *Hickman* in the transaction. He was making a payment of their debt. But this payment as to the sole view and object for which it was received was a nullity. To *Lucas* it was as worthless as if it had been made in forged bank notes ; and but for his reliance on *Turner*, he would no more have received the payment in this note than in forged bank notes. In the case cited by Mr. *Hopkins* from 3 John. 528, the partner after the dissolution created the debt ; here the debt was pre-existing, its discharge by the acting partner was for the benefit of both. The powers of the partnership, as to things past, continue in the partner who is to wind up its concerns so far as is necessary for this purpose. 6 John. 267. 1 Taun. 104, and cases there cited. It was on the original contract, and not on the transfer of the note, that we charged the defendants. This is a sufficient answer to the argument as to want of due diligence in pursuing the other parties to the note ; and if this position be sound, the Court below was right in refusing the instructions prayed for, and in charging the Jury that if they believed *Turner's* signature to be forged, that the notice to the endorser and the authority from *Hickman* to *Pope* to make the transfer, was not necessary to be proved. The Record shews that *Pope* and *Hickman* bought our property, that we did not receive in payment for it what we expected we were receiving. The verdict was equitable. A Court of original jurisdiction in such a case would not, I presume, have awarded a new trial. The writ of Error in this case is tantamount to an application for a new trial ; and I infer that this Court, unless for strong and clear reasons, will not disturb the verdict. 2 Term R. 44. 3 John. Cases, 125.

*Clay* on the same side.—The history of this transaction, as shewn by the Record, is this : *Nance* and Co. sell pro-

perty to *Pope* and *Hickman*, and receive their note for part of the price. *Pope*, some time afterwards, as a payment of this note, transfers the note of *Hutchings* and Co. and *Turner*, endorsed by *Harris*. *Lucas* receives it, relying solely on *Turner*; his signature turns out to be forged. *Nance* and Co. by this action sought to recover what remains due for the property sold, and on the original note of *Pope* and *Hickman*. They bring an action of assumpsit. Does the Record shew that *ex equo et bono* they have good cause of action? I do not deny that one parol contract may be extinguished by another; but has the original debt of *Pope* and *Hickman* been extinguished? As to the sole object which induced the assent of *Lucas* to receive the transferred note, it was totally worthless; then the payment, like any other contract under the same circumstances, is to be considered as null, and the original cause of action revived; and if so, it is sufficient to declare on it without adverting to all the consequent circumstances. The case cited by Mr. *Hutchinson* from 7 Term R. 60, 65, proves this. So, where there is a transfer of a bill by delivery, not expressly agreed to be taken in payment of a precedent debt, or where the drawee has no funds of the drawer, the right of action on the original consideration is unimpaired. In 6 Mass. R. 321, the vendor received promissory notes in payment for the rum sold, and the notes were afterwards discovered to be forged. In an action on the original consideration, Chief Justice *Parsons* says, If the original intent of the parties was to sell and buy notes, and pay in rum, the defendant would not be liable in this case; but it would be otherwise if the intent was to sell for money, and for the accommodation of the purchaser notes were received which proved to be forged, and the defendant has not paid the money. What was the original intent in the contract in the case at bar? Was the transferred note a part of the original consideration for the sale, or was it received in lieu of the money due on the original note of *Pope* and *Hickman?* Can a payment in bank bills which, if forged, Mr. *Hopkins* admits would not discharge the party from his liability on the original consideration, be distinguished from the principle declared to be the law in this case? But, in legal contemplation this payment of the note was fraudulent: the evidence shews that it was taken for *Pope's* benefit; that he represented it to be a good and solvent note. Was this true if it was forged—if he did not know it to be genuine? There was an affirmation on his part by which *Lucas* was deceived as to his sole object for receiving the note; and this rendered the trans-

action fraudulent. But fraud makes every contract into which it enters void. Com. Contracts, 37, 38. 6 John. 110. On the transfer of any instrument there is an implied warranty that it is not forged. 15 John. 240. The decision here, it is true, is incidental, or determining on the competency of the witness. But on principle, it would seem that such warranty is as much implied on the transfer of a note as warranty of title on the sale of a chattel. I am not disposed to deny that if a creditor, knowing that the partnership has been dissolved, takes a separate note of one partner, the other is discharged ; but in the case cited the transaction appears to have been in good faith. In the case of *Tom* v. *Goodrich*, the security executed the bond at the request of his co-obligor, and relied solely on him. Not so here. *Lucas* throughout the transaction was endeavouring to obtain payment of the original debt due from both partners. In the case reported in 8 John. 62, three notes were surrendered on a mortgage being given, which, by the fraud of the debtor, was not recorded. It was held that the original debts were revived notwithstanding the surrender of the notes. In the charge of the Court below the doctrine applicable to the transfer of the note, as now contended for by the plaintiffs in Error, was declared to be the law governing the case, unless the Jury should believe that the signature of *Turner* was forged. I think that we have shewn that if it was forged the payment was a nullity, and the right of action on the original consideration was revived ; and the Record shews that this was the right which we endeavoured to enforce. A bill of Exceptions to the charge of the Court is, in this country, the same in effect as an application for a new trial in England, and should be tested by the same principles. On a trial and verdict such as this at Nisi Prius there, would the Court of King's Bench award a new trial ?

*McKinley* in reply.—Although this subject is new in the legal controversies which have been decided in this State, the questions involved have long since been settled in England and by the Courts of other States. An analysis will reconcile all the cases. They may be arranged under the following classes :

1, Notes of third persons in payment of a precedent debt. Under this head the note of one partner during the partnership for the debt of the Firm is considered as the note of a third person.

2, A note of the same party to the same for the same consideration. This is not an extinguishment of the first

note, because no new security is thereby created. But in an action on the first note, the second must be proved to have been lost or destroyed, or must be produced and cancelled at the trial. Under this head the doctrine, that one simple contract cannot extinguish another simple contract, applies.

3, Payments in bills of exchange. When it appears at the trial that the drawer had no funds in the hands of the drawee, or that the bill has been presented for acceptance and dishonoured, the original consideration may be resorted to, no new liability having been created, and there being a perfect right to sue the drawer on the bill so soon as dishonoured ; the plaintiff may waive that right, and sue on the original consideration.

4, Payments in money, or in bank notes considered as money ; if either turn out to be counterfeit, the thing paid having been considered by the parties as the thing due, and proving not to be what it was taken for, is regarded as nothing.

5, Notes of third persons given in payment on fraudulent representation of solvency and the like, which the party making them knew to be false ; in such cases the fraudulent circumstances must be averred and proved.

6, Promissory notes, or other things received conditionally as payment. The condition (as when paid, &c., to be credited,) expressed in a receipt or by the agreement of the parties. If the contingency or condition does not appear to have happened or been performed, there appears, according to the terms of the agreement, to have been no payment.

I lay it down as incontrovertible that a note of a third person received in payment must be so considered. The authorities cited on the other side prove this. Ch. Bills, 120 to 130. The doctrine of merger has nothing to do with that of extinguishment. There appears to me to have been a confusion of terms in the argument in this matter. A bond, or even a judgment, may be extinguished by parol contract, as the whole doctrine of pleading shews. Accord and satisfaction is a good bar to an action on a bond, or on a judgment. A promissory note received in payment, extinguishes a judgment, as the authorities cited on both sides shew. If the plaintiffs in the action would resort to the original consideration, it is as clear from all the authorities as on principle, that the note received in payment must be returned, proved to be lost or destroyed, or, on the trial, delivered up to be cancelled. This is evident from the principles which must govern the rescision of any and every

contract. Was the note of *Hutchings* and Co., &c. returned ? Did the plaintiffs in the action do any thing whatever to place us in the same situation as to the means of collecting the money due on it that we occupied at the time of its transfer ? Were even all the liabilities on it exhausted ? It does not appear, as was said in the opening of this argument, but that by due diligence on the part of *Lucas*, who had exclusively the controul of this note, the money might have been made from the estate of *Hutchings*, or from *Bradford*, or *Harris*. If a bill be not accepted, the holder may resort to his remedy either on it or on the original consideration. His right of action accrues immediately, but he must first take the steps which are requisite on his part to give to the party liable to him the means of redress from the other parties in the transaction. How can it be said that *Pope* could not have been able to secure himself if the note had been returned to him in due time ?

But it has been said that there was fraud in the transfer of the note. It is the first time that I have heard, that in the Appellate Court fraud, though not proved or even averred in the Record, shall be presumed. Even were it admitted that *Pope* acted fraudulently, is *Hickman* responsible for it ? If authority were necessary as to this matter, the case of *Tom* v. *Goodrich* (2 John. 213,) is conclusive. I cannot easily perceive why the case of ex parte Blackburn should have been resorted to to sustain the defendants in Error. Lord *Eldon* there said, " If there is an antece-" dent debt, and a bill is taken without an endorsement, " and it turns out bad, the demand for the antecedent debt " may be resorted to." How resorted to ? According to the common law mode, on the principle of the rescision of the contract ; and this rescision must be shewn by the delivering up of the bad bill. In the case cited from 3 Cra. 311, *Harris* v. *Johnson*, the opinion of the Court appears to turn on the obvious injustice of allowing to the same person a *double satisfaction* on the note received as conditional payment, and on the original consideration, and withholding from the debtor who had paid for the note, the right of resorting to the party who was liable to him when he parted with it. In *Sheehy* v. *Mandeville* and *Jameson*, the Court held that the note given and received in discharge, was a bar to the action on the original consideration. The case from 7 Mass. 286, we rely on throughout. There it was held that the note paid was at the risk of the party who received it, unless there was an agreement to the contrary. Compare this with the case from 6 John. 110, and compare both cases with the case on the Record.

In the case in Johnson, the plaintiff offered to prove that the defendant knew the maker of the note to be insolvent. Is any such thing even charged here? Even if fraud in the representations as to *Turner* had been proved, there are other liabilities on the note. The contract was entire and indivisible, and the defendants in the action were not liable until the second contract had been rescinded. The plaintiffs have themselves averred that the transferred note was received in payment of that of *Pope* and *Hickman*. The gentlemen on the other side have laboured to establish the very doctrine for which we contend. If the original contract was revived, was it not the promissory note of *Pope* and *Hickman*; and was not this evidence of the debt or duty? They should then have declared on this note. *Lucas*, in receiving the transferred note, was not connected with *Nance*, nor had *Hickman* any thing to do with this part of the transaction; and yet the action on it was brought by *Nance* and *Lucas* v. *Pope* and *Hickman*. The Judge of the Circuit Court in his charge rested the whole case on the forgery of *Turner's* signature; and this, as I have endeavoured to shew, was not of itself sufficient either to rescind the contract or to give the plaintiffs a right of action.

4th of *January*, 1825.—The Chief Justice delivered the opinion of the Court.

In this case the facts, so far as they are considered material, seem to be, That *Pope* and *Hickman* purchased from *William Davis* sundry negroes, and in part payment gave their note, dated 6th of *February*, 1819, for $6,662, payable to *John Brahan* or order nine months after date. *Brahan* endorsed the note in blank, and *Davis* endorsed it to *John Nance* and Co. the defendants in Error. In the Spring of 1819, the partnership of *Pope* and *Hickman* was dissolved, and *Hickman* assigned all his interest in the partnership effects to *Pope*. In *December*, 1819, *John R. Lucas*, one of the firm of *Nance* and Co. with a full knowledge that the partnership of *Pope* and *Hickman* had been dissolved, applied separately to *Pope* for payment of the note. An agreement was made between them that *Lucas* should take the note of *S. D. Hutchings* and Co. and *Simon Turner*, endorsed by *Egbert Harris*, for $6,408, dated 22d day of *December*, 1819, payable 1st of *August*, 1820. *Lucas* accordingly received this note and the balance of the money from *Pope*, and gave up to him the note of *Pope* and *Hickman*, which *Pope* cancelled by striking a pen across the signatures; and so cancelled, it remained in his possession. *Pope* declared that he would not be responsible for the solvency of the

makers or endorser of the note paid over, and refused to endorse it ; but represented *Hutchings* and Co. to be merchants in good credit, and *Turner* and *Harris* to be respectable planters. At the maturity of the note *Lucas*, as assignee of *Harris*, instituted suit against *Hutchings* and *Bradford*, his partner, and against *Turner*. The suit abated, as to *Hutchings*, by his death. Judgment by default was recovered against *Bradford*. *Turner* plead that he did not execute the note, supporting his plea by affidavit ; and on that plea verdict and judgment were rendered in his favour. Before the commencement of this suit *Pope* was apprised that *Turner* had alleged that his signature was forged, and had agreed that it would be well to bring suit, but made no acknowledgment of his liability. There is no evidence of fraud on his part ; so far from it, there is evidence that he had offered the cotton to *Lucas*, on the sale of which afterwards made to *Hutchings* and Co. he received the note which he transferred to *Lucas*. No notice of demand and non-payment, &c. was given to *Harris* the endorser. No proceedings were had against the representatives of *Hutchings*, and after the judgment by default against *Bradford* no farther steps were taken against him. On the trial of the case at bar in the Court below, the presiding Judge charged the Jury that if they believed from the testimony that the signature of *Turner* was a forgery, and that the note was given in payment of the debt of *Pope* and *Hickman*, they must find a verdict for the plaintiff. The Jury returned a verdict for the plaintiff. Exceptions to this charge, and several other bills of Exceptions were taken on the trial, and the various points growing out of them have been argued. But such of them as will affect the decision of the case can be examined under this bill of Exceptions to the Judge's charge.

In the outset of this examination I must declare that my researches for a case in point have been unsuccessful ; but in cases analogous to this, principles have been laid down which I believe will, when applied to this, relieve it of every difficulty. The adjudged cases all go to support this rule— that where the note of a third person received in payment of a precedent debt proves to be a forgery, an action will lie on the original consideration as though no payment had been made ; but this right of action is under these qualifications : the note must be returned as soon as the forgery is discovered. The plaintiff must place the defendant in the same condition as to his rights on the forged note that he was in when he made payment of it. If the defendant acted in good faith, although the note paid may be a forgery, he is discharged from all liability if the plaintiff has not

40

performed these pre-requisites. Put this case on the strong-est ground for the plaintiffs in the action, that the note paid was an entire forgery, it was incumbent on them to return or tender it to *Pope* as soon as the forgery had been disco-vered. *Turner* had refused payment, alleging that his sig-nature was forged. This should have warned the plaintiffs to act with circumspection, and to avoid every thing like negligence on their part. But *Lucas*, as assignee of *Har-ris*, without offering to return the note to *Pope*, institut-ed suit on it. *Pope* and *Hickman* should have been placed in the condition in which they were when they paid it away. Notice of the non-payment by the makers was not given to *Harris*, and by this neglect he has been relieved from all liability to the holder, or to *Pope* and *Hickman* to whom he was originally liable as endorser. It will thus be perceived that it is impossible that *Pope* and *Hickman* can be restored to the condition in which they were when they transferred the note ; and if they cannot, they are discharg-ed from all liability as the case stands on this Record. Again, although the name of *Turner* is a forgery, it does not necessarily follow that the note was of no value. It does not appear from the Record that *Hutchings* and *Brad-ford* were insolvent, or that the money might not have been collected from them. In the cases in the books where bills of exchange have been accepted and paid away in dis-charge of precedent debts, and it was afterwards disco-vered that the drawer's name was forged, it has been held that the acceptor is not discharged ; and that if the holder does not return the bill as soon as the forgery is discovered, he is supposed to rely on the acceptor, and the party who paid it away is wholly discharged. Here the name of one of the makers only is forged, and the instrument is not wholly void. The liability of *Hutchings* and Co. and of *Harris* was not destroyed by the forgery of *Turner's* name. The plaintiffs in the action were bound to use due diligence in protecting the interests of the defendants (as well as their own) in the note transferred.

There can be no doubt that the transfer of the note was intended as a payment, and not as security for the pay-ment of the precedent debt. Why was the note of *Pope* and *Harris* given up to be cancelled ? Why did *Pope* re-fuse to endorse ? Why pay in money the balance of the original debt ? Why did *Lucas*, after discovering that *Turner's* name was forged, go on to sue in his own name ? All these circumstances go to shew conclusively the intention of the parties to consider it a payment.

It seems then that the charge of the Judge on the trial

in the Circuit Court was erroneous. It is the unanimous opinion of the Court that the judgment be reversed, and that the cause be remanded.

Judge *Ellis* not sitting.

Note by the Chief Justice.—Since the decision of this case, I have examined with much interest the opinion of the Supreme Court of the United States, in the case of the Bank of the *United States* against the Bank of *Georgia*, (10 Wheaton, 333,) and find that the principles here laid down have been fully recognized by that Court. Indeed, the Supreme Court of the United States seem to have gone much farther, and to rest the question almost entirely on the understanding of the parties at the time of paying and receiving the notes. If they considered it as payment, and not as security for payment of a precedent debt, it would be at the risk of the party receiving it. It is not so said in so many words ; but the reasoning of Judge *Story*, and the authority on which he rests his opinion, both go to support this position.